ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE GUAYNABO; MUNICIPIO AUTÓNOMO DE BAYAMÓN<br><br>Recurridos<br><br>v.<br><br>AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO; LUMA ENERGY, LLC; LUMA ENERGY SERVCO, LLC<br><br>Recurrentes<br>MUNICIPIO AUTÓNOMO DE GUAYNABO; MUNICIPIO AUTÓNOMO DE BAYAMÓN<br><br>Recurridos<br><br>v.<br><br>AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO<br><br>Recurrentes | KLRA202500280<br><br><br><br>CONSOLIDADO CON<br><br><br><br>KLRA202500283 | *REVISIÓN ADMINISTRATIVA* procedente del Negociado de Energía de Puerto Rico<br><br>Casos Núm.: NEPR-RV-2019-0125; NEPR-QR-2019-0149<br><br>Sobre: Errores en la aplicación de la normativa sobre contribución en lugar de impuestos (CELI) *REVISIÓN ADMINISTRATIVA* procedente del Negociado de Energía de Puerto Rico<br><br>Casos Núm.: NEPR-QR-2019-0149; NEPR-RV-2019-0125<br><br>Sobre: Resolución Final |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 17 de julio de 2025.

LUMA Energy, LLC y LUMA Energy ServCo, LLC (LUMA) presentaron un recurso de *Revisión Judicial* asignado a la causa KLRA202500280. Igualmente, la Autoridad de Energía Eléctrica de Puerto Rico (AEE) interpuso el recurso KLRA202500283. En ambos cuestionan la Resolución que emitió el Negociado de Energía de la Junta Reglamentadora de Servicio Público de Puerto

Rico (Negociado de Energía) el 13 de marzo de 2025, enmendada *Nunc Pro Tunc* el 19 de marzo de 2025. En esta, el Negociado de Energía adjudicó las propiedades municipales que debían ser cobijadas por el mecanismo de compensación en lugar de impuestos (CELI), conforme al uso predominantemente no lucrativo de dichas facilidades. También determinó las propiedades que no cumplían con los criterios de rigor que debían permanecer sujetas a facturación por el servicio de energía eléctrica y las aquellas facilidades de uso mixto.

Asimismo, LUMA y la AEE, cuestionan la Resolución que emitió el mismo ente el 4 de abril de 2025, en la cual aclaró que la Resolución del 13 de marzo de 2025, mediante la cual se incluyeron en la CELI ciertas instalaciones, aplicaba de forma retroactiva y prospectiva. Por recurrir de las mismas determinaciones, el 16 de mayo de 2025, consolidamos los recursos.

Evaluados los escritos determinamos ***Modificar*** las resoluciones recurridas.

## I.

El 17 de mayo de 2019 la Directora de Servicio al Cliente de la AEE emitió una decisión final respecto a la exclusión de la CELI de ciertas propiedades del **Municipio de Bayamón**, para los años fiscales **2016-2017; 2017-2018; 2018-2019; 2019-2020**. Las entidades fueron excluidas de la CELI por generar ingresos y ser utilizadas para actividades que no son servicios municipales. En desacuerdo, el 14 de junio de 2019, el Municipio de Bayamón presentó la solicitud de Revisión ante el Negociado de Energía, (NEPR-RV-2019-0125). El 19 de julio de 2019 la AEE contestó la Revisión.

De otro lado, el 8 de julio de 2019 la AEE emitió una decisión final respecto a la exclusión de la CELI de ciertas propiedades del **Municipio de Guaynabo**, para los años fiscales **2018-2019 y 2019-2020**. El 21 de agosto de 2019 el Municipio de Guaynabo presentó la querella ante el Negociado de Energía (NEPR-QV-2019-0149). El Municipio alegó que, aun si las instalaciones generaban ingresos, el carácter principal de estas facilidades era público y sin fines de lucro, pues los ingresos no superaban los costos de operación. El 30 de septiembre de 2019 la AEE contestó la Querella del Municipio. Expuso que la CELI no cobijaba instalaciones que son concebidas con ánimos de lucro, pero luego tienen pérdidas económicas en la operación.

Ambos casos fueron consolidados y se incluyó a LUMA como parte indispensable, por ser el operador del Sistema de Transmisión y Distribución de la AEE desde el 1ro de junio de 2021. LUMA contestó el recurso de revisión del Municipio de Bayamón y la Querella del Municipio de Guaynabo.

Luego del descubrimiento de prueba, los Municipios presentaron solicitudes de revisión sumaria para cada una de las instalaciones en controversia, a saber: Coliseo Rubén Rodríguez, Golf Course Bayamón, Mercado Río Hondo en Municipio de Bayamón. Para el Municipio de Guaynabo las instalaciones incluían eran: la Escuela de Bellas Artes de Guaynabo, el Coliseo Mets Pavillion, el Guaynabo Medical Mall, el Paseo Tablado, el Complejo Torrimar, el Museo del Deporte, el Centro Yolanda Guerrero y el Centro Bellas Artes. En síntesis, adujeron que las facilidades en controversia operaban sin ánimo de lucro y estaban

dirigidas a la prestación de un servicio o fin público, que se realiza al costo o a menos del costo de producción del servicio.[1]

Mientras tanto, el 15 de octubre de 2024, LUMA y la AEE presentaron sus respectivas mociones de resolución sumaria.[2] Sostuvieron que las facilidades fueron excluidas correctamente, por ser utilizadas por personas privadas para actividades con fines de lucro o por personas o por entidades que, aunque no tienen fines de lucro, no prestaban servicios municipales. En tales casos, procedía que se ordenara a los Municipios satisfacer el monto adeudado por el consumo de energía en esas facilidades.[3]

El 11 de febrero de 2025, las partes presentaron sus respectivas oposiciones a las solicitudes de resolución sumaria[4].

Sometido el asunto, el 13 de marzo de 2025, enmendada *nunc pro tunc* el 19 de marzo de 2025, el Negociado emitió una *Resolución Final y Orden* en los casos consolidados. Allí expuso el derecho aplicable en cuanto a la Contribución en Lugar de Impuestos (CELI). Para determinar si una facilidad municipal estaba cubierta por la CELI, el Negociado evaluó ciertos criterios, entre ellos, la estructura o tipo de entidad organizadora, el propósito del evento, cobro de arrendamiento, venta de boletos y, en los casos donde se combinan fines públicos y ánimo de lucro, evaluó cual de estos elementos tenía más peso.[5] El Negociado indicó que analizaría cada facilidad considerando el uso que se le daba con el fin de determinar si las actividades que se realizaban en ellas eran con fines de lucro o sin fines de lucro. Indicó el Negociado que, para estar cobijadas por la CELI, la actividad

---

[1] Apéndice del KLRA202500280, pág. 20,031.
[2] Apéndice del KLRA202500280, pág. 20,029.
[3] Apéndice del KLRA202500280, pág. 20,031.
[4] Apéndice del KLRA202500280, pág. 20,030.
[5] Apéndice del KLRA202500280, pág. 20,038.

debía ser predominantemente sin fines de lucro. Por otro lado, sostuvo que cuando una actividad estaba destinada principalmente a generar ganancias, se consideraba lucrativa.[6]

Con este análisis, el Negociado determinó incluir en la CELI a las facilidades en el Coliseo Rubén Rodríguez de Bayamón, al Museo del Deporte en Guaynabo, a la Escuela de Bellas Artes de Guaynabo, al Coliseo Mario Quijote Morales (Mets Pavillion), al Centro de Bellas Artes de Guaynabo y al Centro Cultural Yolanda Guerrero.

A su vez, el Negociado determinó que las instalaciones en el Río Bayamón Golf Course, el Complejo Deportivo Torrimar y el Guaynabo Medical Mail operaban con un uso **mixto** por incluir actividades sin y con fines de lucro.

En cuanto a estas instalaciones, el Negociado le ordenó a los Municipios segregar la medición de las áreas con fines de lucro, de modo que estas paguen de forma separada sus costos de energía. Para estas áreas, el Negociado determinó, que el consumo eléctrico de estas sería **prospectivamente, a partir del momento en que se finalice la segregación y se pueda medir el consumo**.[7] Indicó que el consumo eléctrico de las áreas con fines de lucro, **previo a la segregación,** facturado al Municipio **deberá ser incluido dentro de la CELI.** Ello, de conformidad a la Sección 3.04 (C) del Reglamento 8818, la cual establece que, en circunstancias excepcionales, si la instalación de medidores separados, contadores auxiliares o submediciones resultase demasiado onerosa o si fuese imposible establecer un estimado de la porción del consumo de las propiedades o instalaciones que albergan entidades o personas cuyo consumo

---

[6] Apéndice del KLRA202500280, pág. 20,039.
[7] Apéndice KLRA202500280, pág. 20,061.

esté excluido de la CELI, o si existe alguna otra causa justificada, el municipio podrá incluir una solicitud al Negociado de Energía a los fines de incluir el consumo eléctrico de la propiedad en cuestión, o parte de éste, dentro de la CELI.  A esos efectos, el Negociado le concedió a los Municipios sesenta (60) días para llevar a cabo la segregación, prorrogables si las circunstancias lo justificaban.[8]

En reacción, el 3 de abril de 2025, los Municipios presentaron una *Moción de Reconsideración Parcial de la Resolución Final y Orden*.  Solicitaron que el Negociado aclarara que la determinación de incluirla en la CELI aplicara retroactivamente como prospectivamente, mientras las propiedades continúen utilizándose principalmente para fines no lucrativos.[9]

El 4 de abril de 2025, el Negociado de Energía emitió otra *Resolución* para aclarar que la **inclusión** de las facilidades municipales bajo el mecanismo de la CELI tenía efecto **retroactivo** y que la inclusión continuará prospectivamente, siempre y cuando, el uso de la facilidad no varíe.  Indicó, también, que cualquier cambio sustancial en el uso de la facilidad podrá conllevar una reevaluación de su elegibilidad bajo el mecanismo de la CELI.[10]

El 8 de abril de 2025, LUMA y la AEE presentaron sus respectivos escritos de reconsideración, las que fueron denegadas mediante *Resolución* emitida el 10 de abril de 2025.

Entretanto, el 2 de mayo de 2025, los Municipios presentaron una *Moción Solicitando Prórroga para Cumplir con*

---

[8] Apéndice KLRA202500280, págs. 20,061-20,062; 20,072.
[9] Apéndice KLRA202500283, pág. 17,988.
[10] Apéndice KLRA202500283, págs. 17,993-17,994.

*Resolución Final y Orden.*  En esta solicitaron un término adicional de doscientos setenta (270) días para cumplir con el proceso de planificación, diseño, endosos, subasta y construcción.[11]

El 8 de mayo de 2025, el Negociado emitió una *Resolución y Orden*.  En esta aprobó la prórroga solicitada.  Ordenó, además, lo siguiente:

> A los Municipios a que, en un término de treinta (30) días, contados a partir de la notificación de la presente Resolución y Orden, **presenten estimados de consumo, certificados por un perito o un ingeniero licenciado, de todas las facilidades que el Negociado de Energía determinó excluir de la CELI**.  Dichos estimados serán utilizados, temporeramente, por LUMA para descontar, del subsidio de la CELI, la energía consumida por las facilidades excluidas.  También, el Negociado de Energía ORDENA a LUMA a que, en un término de treinta (30) días, contados a partir de la notificación de la presente Resolución y Orden, presente un plan detallado de cómo utilizará dichos estimados de consumo, a ser presentados por los municipios, para facturar correctamente a los municipios, empezando el próximo año fiscal (factura del mes de julio de 2025).

Mediante *Resolución Aclaratoria* del 9 de mayo de 2025, el Negociado de Energía informó que la orden del 8 de mayo de 2025 se refería únicamente a las facilidades de uso **mixto** en el Complejo Deportivo de Torrimar, el Guaynabo Medical Mall y Río Bayamón Golf Course.

Insatisfecho, el 12 de mayo de 2025, LUMA incoó el presente recurso asignado a la causa KLRA202500280.  Alegó que incidió el Negociado de Energía en lo siguiente:

> **Primero**: Al aplicar incorrectamente criterios no contemplados en la ley aplicable sobre si los ingresos que generan las instalaciones municipales son suficientes para cubrir sus costos operacionales y al incluir en la CELI instalaciones que albergan entidades con fines de lucro y/o que no proveen servicios municipales.

---

[11] Apéndice KLRA202500283, págs. 18,037-18,047.

**Segundo**: Al determinar que los municipios no tendrán que pagar por el consumo de energía eléctrica adeudado de los negocios con fines de lucro que arriendan en instalaciones de uso mixto, a pesar de que el propio negociado determinó que fueron excluidos de la CELI correctamente.

**Tercer**: Al determinar que las instalaciones que determinó incluir en la CELI se deben mantener en la CELI indefinidamente a menos que se pruebe que sus usos han cambiado, en violación a las disposiciones claras de la Ley 83 y el Reglamento 8818, que requieren que se haga esta determinación anualmente.

En el recurso KLRA202500283 la AEE también alegó que incidió el Negociado de Energía, por lo siguiente:

**Primero**: Al incluir instalaciones en la CELI bajo el fundamento de que operaban en déficit o que sus ingresos no cubrían los gastos operacionales, toda vez que este criterio no es parte de los contemplados en la Sección 3.01 del Reglamento 8818 ni en la Sección 22(b)(2) de la Ley 83-1941.

**Segundo**: Tras concluir que segregar el consumo de ciertas áreas de las facilidades de uso mixto sería "altamente oneroso", sin que existiera evidencia en el expediente administrativo que así lo demostrara.

**Tercero**: Al concluir que su determinación tiene efecto retroactivo y prospectivo, cuando debió indicar que la resolución solamente es de aplicación a los años evaluados por el Negociado, toda vez que no existe evidencia en el expediente administrativo sobre los años posteriores a los evaluados y los municipios deben certificar anualmente las facilidades dentro del mecanismo del CELI.

La parte recurrida, Municipio de Bayamón y Municipio de Guaynabo, presentaron su posición al recurso. Evaluados los escritos de todas las partes, nos expresamos.

## II.

## A.

La Contribución en Lugar de Ingresos (CELI), se define como, "la aportación mediante la cual la AEE compensa a los municipios, con servicio de electricidad, por los ingresos que éstos dejan de recibir como resultado de la exención contributiva que

disfruta la AEE en virtud de la Sección 22 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada." Artículo 2, Sección 2.01 del Reglamento Sobre la Contribución en Lugar de Impuestos (CELI), Reglamento 8653.

La mencionada Sección 22 de la Ley Núm. 83 de 2 de mayo de 1941, "Ley de la Autoridad de Energía Eléctrica de Puerto Rico", (Ley 83-1941), según enmendada, dispone lo siguiente:

> Exención de Contribuciones; Uso de Fondos. 22 LPRA sec. 212
>
> [……..]
>
> (b) Subsidios, CELI y otras aportaciones:
>
> (1) A partir de la vigencia de la nueva tarifa, la Autoridad calculará **anualmente** el costo de subsidios, subvenciones y aportaciones otorgadas por las leyes vigentes, programas de electrificación rural, sistemas de riego público, alumbrado público y contribución en lugar de impuesto (CELI) y establecerá como un cargo separado en su factura transparente los costos del CELI y de los demás subsidios antes mencionados de la siguiente forma:
>
> a. Pago equivalente a tributos municipales, CELI;
> b. Costos de Subsidios, aportaciones, alumbrado público, programa de electrificación rural y sistema de riego público.
>
> (2) A partir del Año Fiscal 2015-2016, la Autoridad establecerá una cantidad o tope máximo de la aportación por CELI por municipio que será computada del promedio de consumo energético por municipio, en kilovatio-hora por año, de los tres años de más alto consumo desde el cambio a la fórmula en el año 2004 hasta el Año Fiscal 2013-2014.
> [……..]
> No obstante, no se considerará dentro del cálculo del tope de la aportación a los municipios por CELI la facturación **por consumo de energía eléctrica de instalaciones públicas que albergan corporaciones o negocios con fines de lucro, los cuales pagarán por el servicio energético. En el caso de instalaciones municipales con usos mixtos, que incluyan actividades sin fines de lucro y con fines de lucro en las cuales la segregación de la medición no sea viable por razones técnicas o de costo, la Autoridad podrá facturar el consumo del negocio o actividad con**

**fines de lucro a base de estimados, utilizando la submedición, o una combinación de ambas, según disponga la Comisión en su reglamento sobre el CELI, sin descartar que, bajo circunstancias excepcionales y según determine la Comisión, por petición fundamentada del municipio, tal consumo se incluya como parte del CELI**.  La Autoridad enviará a cada municipio todos los meses un informe del consumo por cada instalación que cuente con un contador o metro de consumo independiente, el cual detallará el consumo del mismo mes del año anterior y un cálculo del consumo acumulado a la fecha comparado con el consumo acumulado a la misma fecha del año anterior.  Este informe también proveerá un total por partida informada.  Para facilitar la evaluación de los informes, la Autoridad deberá, en un plazo de doce (12) meses a partir de la vigencia de esta Ley, modificar sus sistemas y programas de lectura para que todos los contadores del municipio cuya facturación se cargue contra el consumo por CELI sean leídos el mismo día.

[……..]

(5) No más tarde del 30 de abril de cada año fiscal, la Autoridad notificará a los municipios el tope de consumo aplicable al CELI correspondiente al año fiscal siguiente. Dicho tope de consumo estará sujeto a revisiones trimestrales por la conexión de nueva carga conforme a lo dispuesto en este inciso (b), revisiones que deberán haber sido efectuadas no más tarde del 31 de marzo del año para poder ser integrada en el cómputo del tope del CELI del año fiscal siguiente. […]

La insuficiencia de los municipios, cuyo consumo en kilovatios-hora sea igual o menor a su tope, se registrará en los libros de la Autoridad como una cuenta por pagar a los municipios y una cuenta por cobrar a los municipios, para propósitos contables. Por tanto, dichos municipios no tendrán que pagarle a la Autoridad por la insuficiencia ni la Autoridad a los municipios.

(6) La Comisión de Energía, con el asesoramiento de la OEPPE, adoptará la reglamentación necesaria para la implantación de la aportación o mecanismo de compensación en lugar de impuestos o CELI a los municipios y otros deberes establecidos en este inciso (b), cuya reglamentación será efectiva y aplicable desde el Año Fiscal 2015-2016.
[……..]

**B.**

De acuerdo con sus facultades, la Comisión de Energía de

Puerto Rico adoptó y promulgó el Reglamento Sobre la Contribución en Lugar de Impuestos (CELI), Reglamento Número 8653. El propósito de este Reglamento era establecer el mecanismo y las normas que regirán la implantación y distribución de la contribución que la Autoridad de Energía Eléctrica ("AEE") debe realizar a los municipios en compensación por la exención de tributos municipales que posee por virtud de la citada Sección 22 de la Ley Núm. 83. Sección 1.03 del Reglamento 8653.

El Reglamento 8653 fue enmendado el 27 de septiembre de 2016, en virtud del Reglamento 8818 (Reglamento 8818), intitulado *Enmienda al Reglamento Núm. 8653, Reglamento Sobre la Contribución en Lugar de Impuestos (CELI)*. La Sección 3.01 y 3.02 del Reglamento 8818, dispone de la siguiente manera:

**Sección 3.01** Consumo cobijado por la CELI.

La aportación correspondiente a la CELI incluirá:

(1) el consumo de energía eléctrica de toda propiedad e instalación municipal que se utilice para actividades o servicios **sin fines de lucro** de conformidad con las disposiciones de este Capítulo y el procedimiento establecido en la Sección 3.03 de este Reglamento;

[…]

(4) el consumo de energía eléctrica de las instalaciones municipales que por sus circunstancias excepcionales la Comisión determine debe incluirse como parte de la CELI, según las disposiciones de la Sección 3.04 de este Reglamento.

**Sección 3.02**.- Consumo excluido de la CELI.

No se considerará dentro de la aportación por concepto de la CELI el consumo de energía eléctrica de toda propiedad e instalación municipal que se utilice:

(1) para actividades o servicios **con fines de lucro**;

(2) por entidades privadas sin fines de lucro que no presten servicios municipales; **o**

(3) por personas que no sean una entidad municipal.

[…]

La Sección 1.09 del Reglamento 8818 define qué son actividades o servicios con y sin fines de lucro, a saber:

1) "Actividad o Servicios con Fines de Lucro" se refiere a los actos, negocios, servicios o transacciones llevados a cabo por un municipio, por cualquier entidad municipal que esté constituida o formada de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico (como por ejemplo una sociedad, asociación, organización, fundación, institución, corporación municipal, empresa municipal, franquicia, etc.) o por cualquier sociedad, asociación, organización, fundación, institución, corporación o grupo de personas que opere total o sustancialmente **con ánimo de lucro**.

2) "Actividad o Servicios sin Fines de Lucro" se refiere a los actos, negocios, servicios o transacciones llevados a cabo por un municipio o por cualquier corporación especial municipal, empresa municipal u otra entidad municipal que esté constituida o formada de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico (como por ejemplo una sociedad, asociación, organización, fundación, institución, o grupo de personas) dirigidos a la prestación de servicios o fines públicos, sin ánimo de lucro y ofrecidos al público **libre de costo**, **al costo o a menos del costo de producción de dichos servicios públicos**.

15)"Entidad Municipal" incluye al municipio, sus dependencias u oficinas, las empresas municipales, franquicias, corporaciones especiales municipales, así como cualquier persona jurídica y cualquier forma de organización empresarial creada por el municipio al amparo de las leyes del Estado Libre Asociado de Puerto Rico.

16)"Entidad privada sin fines de lucro que ofrece servicios municipales" se refiere a entidades privadas sin fines de lucro, constituidas o formadas de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico, que hayan otorgado un acuerdo por escrito con el municipio para ofrecer al público servicios que el municipio haya ofrecido o se proponga ofrecer a cambio de que se le permita usar una propiedad municipal para ofrecer dichos servicios.

Por otra parte, la Sección 3.03 del Reglamento 8818 establece el Procedimiento para clasificar las propiedades, instalaciones entidades municipales:

**Sección 3.03**.- Procedimiento para clasificar las propiedades, instalaciones entidades municipales.

A) En o antes del **31 de diciembre de cada año, todos los municipios entregarán a la AEE la**

**información necesaria para evaluar y clasificar las propiedades e instalaciones en que ubiquen entidades municipales o personas que llevan a cabo actividades servicios sin fines de lucro, según definidas en este Reglamento, a los fines de identificar aquellas cuentas, propiedades e instalaciones cuyo consumo será incluido como parte de la aportación de la CELI para el siguiente año fiscal**. A esos efectos, los municipios entregarán a la AEE, en o antes de dicha fecha, la siguiente información:

1) Una lista de todas las propiedades e instalaciones cuyo titular sea una entidad municipal o que estén siendo poseídas u ocupadas por entidades municipales. Esta lista deberá especificar, para cada una de esas propiedades e instalaciones, lo siguiente:

a) El nombre de las personas o entidades que tienen la posesión inmediata de la propiedad o instalación (o parte de ésta) y el acto o negocio jurídico en virtud del cual tengan dicha posesión;

b) Una descripción de las actividades que se realizan en -o de los usos que se le dan a- la propiedad o instalación;

c) La fecha desde la cual cada una de esas personas o entidades comenzó a utilizar la propiedad o instalación (o parte de ésta);

d) El número del acuerdo de servicio (o el número del contador o medidor) mediante el cual se ofrece el servicio eléctrico a la propiedad o instalación;

**e) Para toda propiedad o instalación municipal que sea (1) de "usos mixtos", es decir, que albergue entidades o actividades que están incluidas en la CELI y entidades o actividades que están excluidas de la CELI, y (2) que no tenga contadores o medidores separados para estas actividades, el municipio deberá presentar, además:**

**i. Un listado de todas las entidades que alberga la propiedad o instalación, incluyendo si es una entidad incluida en la CELI o si está excluida.**

**ii. El tipo de actividad que realiza cada una de las entidades (e.g. oficina, hotel, parque recreativo, servicios de salud, colmado, etc.).**

**iii. Área superficial, en pies cuadrados (ft2), que ocupa cada entidad.**

2) Una lista de todas las entidades municipales, con especificación de:

[……..]

3) Una lista de todas las propiedades e instalaciones municipales que sean utilizadas para fines recreativos, tales como parques, coliseos, plazas, canchas, centros de actividades, lugares de recreación o centros comunales, entre otros, con especificación de:

a) La fecha desde la cual cada una de esas propiedades e instalaciones es utilizada para tales actividades;

b) El número de acuerdo de servicio del contador que se utiliza para ofrecer el servicio eléctrico a la propiedad o instalación; y

c) Si se realizan actividades con fines o sin fines de lucro en cada una esas propiedades o instalaciones municipales.

4) Cualquier otra información requerida por la Autoridad.

B) La AEE evaluará la información que haya sometido el municipio y clasificará las instalaciones municipales de acuerdo con las disposiciones de este Reglamento. En o antes del **31 de marzo de cada año**, la AEE **notificará al municipio las propiedades e instalaciones municipales cuyo consumo de electricidad estará incluido**, sujeto al Tope Máximo aplicable al municipio para el próximo año fiscal, en la aportación correspondiente por concepto de la CELI. En el caso de las instalaciones que alberguen entidades cuyo consumo esté incluido en la CELI y entidades **cuyo consumo está excluido, la AEE notificará la proporción (en porcentaje) del consumo que será incluido en la CELI y la proporción que estará excluida, según las disposiciones de la Sección 3.04 de este Reglamento**. El consumo excluido de la CELI será facturado a la entidad o al municipio de forma separada, según las disposiciones de la Sección 3.02 de este Reglamento.

C) El consumo de servicio eléctrico de todas aquellas propiedades e instalaciones municipales, así como entidades municipales, cuya información no haya sido sometida a la AEE en o antes del 31 de diciembre, quedará excluido del beneficio de la CELI durante el próximo año fiscal siguiente a la fecha límite de radicación. El municipio será responsable del pago por la totalidad del consumo de dichas propiedades, instalaciones y entidades municipales, independientemente de la naturaleza de las actividades o servicios ofrecidos en la propiedad o instalación, o de la naturaleza de las actividades o servicios ofrecidos por la entidad municipal.

D) En o antes del 31 de marzo de cada año, la AEE

someterá a la Comisión y la OEPPE un informe detallado, por municipio, respecto a las propiedades e instalaciones municipales que, según la notificación hecha a los municipios, se beneficiarían de la aportación por concepto de la CELI. [……..]

E) En o antes del 15 de abril de cada año, la OEPPE notificará a la AEE el Tope Máximo de la aportación por concepto de la CELI correspondiente a cada municipio para el próximo año fiscal.

[…]

A su vez, la Sección 3.04 del Reglamento 8818, atinente a las Propiedades e Instalaciones Municipales que alberguen entidades o actividades cuyo consumo esté incluido en la CELI y entidades o actividades cuyo consumo está excluido, indica así:

A) Cuando una propiedad o una instalación municipal que no tenga contadores (medidores) separados albergue entidades o actividades cuyo consumo esté incluido en la CELI y entidades o actividades cuyo consumo esté excluido, **el municipio deberá procurar la segregación de la medición mediante la instalación de contadores (medidores) separados que permitan distinguir el consumo de las distintas entidades o actividades. Siempre que se pueda medir el consumo de las entidades o actividades incluidas y excluidas de la CELI, el consumo de éstas últimas será facturado de forma separada por la AEE.**

B) Si la segregación de la medición no fuera viable por razones técnicas o de costo, o por cualquier otra justa causa, la AEE, **a solicitud del municipio**, podrá facturar la porción del consumo de las facilidades que albergan entidades o actividades cuyo consumo esté excluido de la CELI: (1) **a base de estimados**, (2) utilizando contadores (medidores) auxiliares o sub-medidores, o (3) una combinación de estos, según lo que se dispone a continuación:

1) En el caso de que el consumo de la entidad o actividad cuyo consumo está excluido de la CELI pueda ser medido a través de contadores auxiliares o submedidores, dicho consumo será restado del consumo total de la propiedad o instalación municipal y será facturado a dicha entidad o al municipio de acuerdo a los contratos de servicio vigentes.

2) En los demás casos, la AEE estimará el consumo de cada una de las entidades o actividades de acuerdo con el siguiente procedimiento:

[……..]

C) **No obstante lo establecido en los incisos (A) y (B) de esta Sección, y solamente en circunstancias excepcionales, si la instalación de medidores separados, contadores auxiliares o submedidores resultase demasiado onerosa, o si fuese imposible establecer un estimado de la porción del consumo de las propiedades o instalaciones que albergan entidades o personas cuyo consumo esté excluido de la CELI, o si existe alguna otra causa justificada, el municipio podrá someter ante la Comisión una solicitud, debidamente fundamentada, a los fines de incluir el consumo eléctrico de la propiedad o instalación municipal en cuestión, o parte de este, dentro de la CELI.** En dicha solicitud, el municipio expondrá, como mínimo, las razones por las cuales entiende que la instalación de medidores separados, contadores auxiliares o submedidores es demasiado onerosa o es imposible establecer un estimado del consumo de la propiedades o instalaciones que albergan entidades o actividades cuyo consumo está excluido de la CELI. La Comisión evaluará la solicitud y notificará por escrito su decisión al municipio y a la AEE.

D) **Si el municipio no presenta la solicitud que se hace referencia en los incisos (B) y (C) de esta Sección, según sea el caso, antes de la fecha límite establecida en la Sección 3.03 de este Reglamento o si no fundamenta debidamente el consumo eléctrico de la propiedad o instalación municipal objeto de la solicitud, dicha propiedad o instalación quedará excluida de la CELI y su consumo total será facturado al municipio de forma separada**.

### C.

La determinación de qué constituye una finalidad pública, es una tarea que recae en la prudencia de las otras ramas de gobierno, y especialmente en la Asamblea Legislativa, quien "tiene la facultad de asignar fondos públicos -- ya sea a entidades públicas, semipúblicas o aun privadas -- siempre que cumplan con una función reconocidamente pública y **cuando el propósito de**

**estas sea colaborar en el desempeño de alguna labor gubernamental**". Dalmau Ramírez et al. v. ELA et al., 2024 TSPR 95, 214 DPR ___ (2024), citando a Aponte Rosario et al. v. Pres. CEE II, 205 DPR 407, 472 (2020) (Colón Pérez, Opinión disidente). Al ejercer tan delicada tarea el Tribunal Supremo ha reconocido que "las opciones del legislador en este campo son amplias, siempre y cuando éste se mueva dentro del marco de la Constitución". Dalmau Ramírez et al. v. ELA et al., *supra.*

Sin embargo, la determinación de lo que constituye un fin público debe "resultar en el más razonable acomodo entre los diversos intereses particulares de la ciudadanía, y en ajuste a los tiempos". Dalmau Ramírez et al. v. ELA et al., *supra*. Ello quiere decir que el concepto de fin público "está ligado al bienestar general y que tiene que ceñirse a las cambiantes condiciones sociales de una comunidad específica". Dalmau Ramírez et al. v. ELA et al., *supra*; P.P.D. v. Gobernador I, 139 DPR 643, 686 (1995). Véase, además, P.R. Telephone Co. v. Tribl. Contribuciones, 81 DPR 982, 997 (1960).

El Tribunal Supremo ha mencionado que la determinación de si la utilización de fondos públicos responde a un fin público requiere **determinar su propósito** y evaluar su contenido para adjudicar si cumple con alguno de los criterios siguientes:

> 1.Redunda en beneficio de la salud, la seguridad, la moral y el bienestar general de todos los ciudadanos.
>
> 2. Está destinado a una actividad de carácter público o semipúblico.
>
> 3. Promueve los intereses y objetivos de la entidad gubernamental, en consonancia con sus deberes y funciones o la política pública establecida.
>
> 4. Promueve programas, servicios, oportunidades y derechos, o adelanta causas sociales, cívicas, culturales, económicas o deportivas.

5. Promueve el establecimiento, modificación o cambio de una política gubernamental.

P.P.D. v. Gobernador I, *supra*, pág. 691.

**D.**

La "Ley de Municipios Autónomos de Puerto Rico", Ley Núm. 81 de 30 de agosto de 1991, según enmendada, vigente al momento de presentarse esta acción, declaraba política pública del Estado Libre Asociado de Puerto Rico el, "otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras, así como los poderes y facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico." Artículo 1.002, 21 LPRA sec. 4001 nota.

A tenor con ello, el Artículo 2.001 de la Ley 81-1991, identificaba entre los poderes y facultades de los municipios los siguientes:

(o) Ejercer el poder legislativo y el poder ejecutivo en todo asunto de naturaleza municipal que redunde en el **bienestar de la comunidad y en su desarrollo económico, social y cultural, en la protección de la salud y seguridad de las personas, que fomente el civismo y la solidaridad de las comunidades y en el desarrollo de obras y actividades de interés colectivo con sujeción a las leyes aplicables**.

(r) Contratar con cualquier agencia pública y con cualquier persona natural o jurídica, para el desarrollo, administración y operación conjunta, coordinada o delegada de instalaciones para brindar servicios públicos y para la construcción, reparación y mantenimiento de instalaciones municipales. Tales actividades incluirán la contratación de proyectos conjuntos con entidades públicas o privadas, **con o sin fines de lucro**, para la construcción y el desarrollo de viviendas de interés social, el desarrollo y la operación de programas o instalaciones municipales, el desarrollo de proyectos, operaciones y actividades de ecoturismo y/o turismo sostenible, y cualesquiera otras donde el municipio requiera la participación de personas naturales o jurídicas externas para la viabilidad de los proyectos y programas. La formalización de la contratación

requerirá la aprobación previa de la Legislatura Municipal.

El Artículo 1.003 m, 21 LPRA sec. 4001 definía la "Entidad sin fines de lucro", de la siguiente manera:

Significará cualquier sociedad, asociación, organización, corporación, fundación, compañía, institución o grupo de personas, constituida de acuerdo a las leyes del Estado Libre Asociado de Puerto Rico y registrada en el Departamento de Estado, que no sea partidista y se dedique en forma sustancial o total a la prestación directa de servicios educativos, caritativos, de salud o bienestar social, recreativos, culturales, o a servicios o fines públicos, que operen sin ánimo de lucro **y presten sus servicios gratuitamente, al costo o a menos del costo real de los mismos.**

De igual manera, el Artículo 1.003 del Código Municipal de Puerto Rico, Ley Núm. 107 de 13 de agosto de 2020, 21 LPRA sec. 7003, según enmendada, declara lo siguiente:

Se declara política pública proveer a los municipios de aquellos poderes y facultades necesarias para que puedan asumir su función fundamental a favor del **desarrollo social y económico de sus jurisdicciones**. […] Se reconoce que los municipios son la entidad gubernamental más cercana al pueblo y el mejor intérprete de sus necesidades y aspiraciones. En consecuencia, se declara de máximo interés público que los municipios cuenten con los recursos necesarios para rendir sus servicios. Se dispone, por ende, que todas las ramas de Gobierno deberán proteger las fuentes de recursos municipales y que las facultades tributarias municipales se interpretarán liberalmente a favor del pueblo representado por el municipio.

**E.**

Es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, 2025 TSPR 33, 215 DPR ___ (2025); Hernández Feliciano

v. Mun. Quebradillas, 211 DPR 99, 114 (2023); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016); Pagán Santiago et al. v. ASR, 185 DPR 341, 358 (2012).   Por lo anterior, también se ha reiterado que las determinaciones administrativas están revestidas de una presunción de legalidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, *supra*; OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Junta de Planificación et al., 204 DPR 581, 591 (2020); Torres Rivera v. Policía de PR, *supra*; Trigo Margarida v. Junta Directores, 187 DPR 384, 393-394 (2012).  El criterio rector al revisar una actuación de la agencia recurrida es la razonabilidad de la acción impugnada. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, *supra*; Torres Rivera v. Policía de PR, *supra*.

Asimismo, la Sección 4.5 de la Ley Núm. 38-2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9675, y nuestra jurisprudencia limita la revisión judicial a los siguientes tres aspectos: "(1) que el remedio concedido por la agencia fue el apropiado; (2) que la revisión de las determinaciones de hecho esté conforme al criterio de evidencia sustancial, y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta". Katiria's Café, Inc. v. Municipio Autónomo de San Juan, *supra,* citando a Pagán Santiago et al. v. ASR, 185 DPR 341, 358 (2012).

En cuanto a las conclusiones de derecho, los tribunales apelativos tienen la facultad de revisarlas en todos sus aspectos. Vázquez v. Consejo de Titulares y Junta de Directores del

<u>Condominio Los Corales</u>, 2025 TSPR 56, 215 DPR ___ (2025); <u>Otero Rivera v. USAA Fed. Savs. Bank</u>, 2024 TSPR 70, 214 DPR __ (2024). Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. (Énfasis nuestro). <u>Jusino Rodríguez v. Junta de Retiro</u>, 2024 TSPR 138, 215 DPR __ (2024); <u>Hernández Feliciano v. Mun. Quebradillas</u>, *supra*; <u>Torres Rivera v. Policía de PR</u>, *supra*, pág. 628.

A tenor con la antes mencionada normativa, resolvemos.

### III.

En el primer señalamiento LUMA y AEE alegaron que incidió el Negociado de Energía al incluir las operaciones de tales instalaciones en la CELI, bajo el fundamento de que operaban en déficit o que sus ingresos no cubrían los gastos operacionales. Adujeron que este criterio no era parte de los contemplados en el Reglamento 8818 ni en la Sección 22(b)(2) de la Ley 83-1941.

En particular, LUMA alegó que los criterios que establece la Sección 3.02 del Reglamento 8818, para conceder el CELI, se basan únicamente en quienes utilizan las facilidades y el propósito para usarlas. Indicó que se debieron excluir de la CELI, las facilidades que son utilizadas por entidades privadas sin fines de lucro que no prestan servicios municipales, que albergan operaciones con fines de lucro, las que son arrendadas a cambio de cánones y/o las que se cobra la entrada para las actividades

que allí se celebran. Señaló que la Ley 83-1941 se centra en el uso que se da a las instalaciones municipales, sin considerar sus ganancias netas. Nos solicitó que se le ordenara al Negociado realizar un análisis de las instalaciones nuevamente, sin tomar en consideración el estado financiero y centrándose en la naturaleza de las actividades que se llevan a cabo.

Por su lado, la AEE indicó que el Negociado incluyó instalaciones en la CELI bajo el fundamento de que operaban en déficit o que sus ingresos no cubrían los gastos operacionales. Adujo que el criterio que utilizó el Negociado no forma parte de los contemplados en la Sección 3.01 del Reglamento 8818 ni en la Sección 22 (b)(2) de la Ley 83-1941. Señaló que la Sección 3.02 del Reglamento 8818 excluye de la CELI el consumo de energía eléctrica de toda propiedad o instalación municipal que se utilice para actividades o servicios con fines de lucro, por entidades privadas sin fines de lucro que no presten servicios municipales o por personas que no sean una entidad municipal.

Revisamos.

La Sección 22 (b)(2) de la Ley 83-1941, dispone que no se considerará dentro del cálculo del tope de la aportación a los municipios por CELI la facturación por consumo de energía eléctrica de instalaciones públicas que albergan corporaciones o negocios con fines de lucro, los cuales pagarán por el servicio energético.

Asimismo, la sección 3.02 del Reglamento 8818 excluye de la CELI a las instalaciones municipales que se utilicen para (1) actividades o servicios con fines de lucro; (2) por entidades privadas sin fines de lucro que no presten servicios municipales; o (3) por personas que no sean una entidad municipal.

Por otro lado, hay que tener presente que la política pública en cuanto a los municipios declara que estos tienen el deber de asumir la función a favor del desarrollo social y económico de sus jurisdicciones. Para ello, deben contar con los recursos necesarios para rendir sus servicios.[12] Para ejercer sus funciones, los municipios tienen la facultad de contratar con cualquier persona natural o jurídica para brindar servicios públicos.[13] En cuanto a las entidades sin fines de lucro que hayan utilizado las facilidades municipales, sus servicios deben estar dirigidos a la prestación de servicios o fines públicos, sin ánimo de lucro y ofrecidos libre de costo, al costo o a menos del costo de producción de dichos servicios. Ver sección 1.09 (2) del Reglamento 8818. Este concepto de servicio público, fines o servicios públicos, es uno amplio y abarcador. El fin púbico, está ligado al bienestar general y que tiene que ceñirse a las cambiantes condiciones sociales de una comunidad específica[14]. Ello implica que: redunde en beneficio de la salud, la seguridad, la moral y el bienestar general de todos los ciudadanos; promueve programas, servicios, oportunidades y derechos, o adelanta causas sociales, cívicas, culturales, económicas o deportivas.[15] La actividad también debe promover el bienestar de la comunidad y en su desarrollo económico, social y cultural, en la protección de la salud y seguridad de las personas. Asimismo, puede fomentar el civismo y la solidaridad de las comunidades y en el desarrollo de obras y actividades de interés colectivo con sujeción a las leyes aplicables.[16]

---

[12] Artículo 1.003 del Código Municipal de Puerto Rico, Ley 107-2020.
[13] Artículo 2.001 de la Ley Núm. 81-1991.
[14] Ver, Dalmau Ramírez et al. v. ELA et al., *supra.*
[15] Ver, P.P.D. v. Gobernador I, *supra*.
[16] Artículo 2.001 (o) de la entonces vigente Ley 81-1991.

De lo anterior podemos concluir que los municipios pueden servirse de entidades privadas para ofrecer algún servicio que promueva el desarrollo de sus comunidades en distintos ámbitos, incluyendo, entre otros, los deportivos, sociales, morales, culturales, así como, aquellos que estén ligados al bienestar general. Al ofrecer este tipo de servicio, las entidades privadas pueden beneficiarse de la CELI, pues lo determinante es el uso que se le dé a las instalaciones y si estas operan con ánimo de lucro.

El Negociado incluyó en la CELI las instalaciones municipales del Coliseo Rubén Rodríguez de Bayamón, el Coliseo Mario Quijote Morales, el Centro de Bellas Artes de Guaynabo y el Museo del Deporte, al Centro Yolanda Guerrero y a la Escuela de Bellas Artes. Esta decisión resulta razonable y no amerita nuestra intervención.

En cuanto al **Coliseo Rubén Rodríguez**, los recurrentes alegaron, que el hecho de que opere con pérdidas no justificaba su inclusión en la CELI. LUMA agregó que, aun si todas las actividades fuesen sin fines de lucro, en éstas no se proveyeron servicios municipales.

El Negociado mencionó que los usos que se le dio a esta facilidad durante los años fiscales 2016 al 2019, solamente seis (6) actividades fueron con fines de lucro. Catalogó que el uso era "predominantemente público y comunitario". El Negociado indicó que el propósito principal de la facilidad era brindar un espacio accesible para eventos que beneficien a la comunidad. Señaló que, aunque ocasionalmente puedan realizarse eventos con fines lucrativos, estos son excepciones y no alteran el propósito principal de la facilidad, que es brindar un espacio accesible para eventos que beneficien a la comunidad. El Negociado expresó

que, debido a que su uso lucrativo no es significativo o constante, debía incluirse bajo la cubierta de CELI.

De lo anterior, surge las actividades identificadas con fines de lucro fueron solamente seis (6), en el periodo de los años fiscales 2016 al 2019.  Este uso, se considera esporádico y no altera el uso de la facilidad que es crear un espacio para beneficio de la comunidad.  Ante esta realidad, se puede considerar que la propiedad municipal opera en su totalidad sin ánimo de lucro.  Por cuanto, la determinación es razonable y no es contraria a derecho.

Para el **Coliseo Mario Quijote Morales o Mets Pavillion**, LUMA alegó que el Municipio cobra por el arrendamiento, sus cantinas, su estacionamiento y, que es utilizado por entidades con fines de lucro.

Para esta facilidad, el Negociado indicó que, aunque se cobra por su arrendamiento, los ingresos generados no cubren los costos de operación y de mantenimiento.  El Negociado de Energía, mencionó las actividades que se llevaron a cabo en el Coliseo, en particular, aludió a eventos de desarrollo físico, emocional y cultural como ferias educativas, charlas de salud, campamentos, prácticas deportivas y eventos benéficos, todos orientados a promover el bienestar comunitario y no a obtener beneficios económicos.  Entendió que opera bajo una misión pública, lo cual enfatiza que su propósito es brindar un servicio comunitario en lugar de perseguir fines lucrativos.  Por ello, determinó incluirlo en la CELI, al considerar el carácter predominante sin fines de lucro de los eventos que se celebraron en esa facilidad y su función a la comunidad.  Mencionó que estas actividades son fundamentalmente deportivas, educativas, culturales o de esparcimiento, que sirven a la ciudadanía sin ánimo de lucro.

Corroboramos que el Reglamento para la Administración y Uso del Coliseo Municipal "Mets Pavilion", provee para sus usos, entre ellos, el arrendamiento para actividades con y sin fines de lucro. También provee para el arrendamiento de la cantina y el estacionamiento mediante concesiones.[17]  Al evaluar la facilidad, resulta que su uso está dirigido al bienestar de la comunidad y operan sin ánimo de lucro. Ante ello, resulta razonable y adecuado incluirlo como parte de la CELI, tal como lo determinó el Negociado.

Para el **Centro de Bellas Artes de Guaynabo,** el Negociado analizó que el Municipio cobra un cargo fijo de cincuenta dólares ($50.00) por consumo de energía eléctrica por cada función.  Indicó que se arrendaba para actividades con fines de lucro y sin fines de lucro. Que desde el año 2017 solo arrendaba un "billboard" para promociones comerciales con un cargo semanal.  Manifestó que los contratos de uso de las instalaciones establecen un canon de arrendamiento nominal, lo que implica que el municipio no busca obtener beneficios económicos, sino facilitar brindar acceso a actividades culturales y de entretenimiento asequible para la comunidad.  Analizó que operaba con pérdidas, lo que fortalecía el argumento de que es una instalación que responde a una misión de servicio público sin fines de lucro.[18]

Pudimos constatar que el **Centro de Bellas Artes**[19] cobraba cánones de arrendamiento para actividades con fines de lucro y sin fines de lucro, más ofrecía servicio de taquillas y estacionamiento.  No obstante, tal como surge de la *Resolución*

---

[17] Apéndice del KLRA202500280, págs. 913-914.
[18] Apéndice del KLRA202500280, pág. 20,076.
[19] Apéndice del KLRA202500280, págs. 460-464.

que revisamos, esta facilidad beneficiaba directamente a la comunidad al ofrecer un espacio de encuentro y expresión cultural con actividades deportivas, artísticas, religiosas y educativas. Todas orientadas al bienestar público, cumpliendo así la encomienda de proveer a la ciudadanía un servicio social. Esto incluye el poner a la disposición de la ciudadanía una pizarra electrónica (billboard) para anunciar actividades. Además, según el expediente, esta facilidad está cerrada desde septiembre de 2017 debido a los daños que sufrió tras el paso de los Huracanes Irma y María. Al evaluar la facilidad, resulta que su uso está dirigido al bienestar de la comunidad y operan sin ánimo de lucro. Ante ello, resulta razonable la determinación del Negociado de incluirlo como parte de la CELI.

Respecto al **Museo del Deporte de Guaynabo**, el Negociado lo incluyó en la CELI al razonar que durante los años fiscales 2016 al 2019 el Municipio arrendó el Museo por una cantidad nominal. Reconoció que el Museo cobraba un canon nominal de entrada y arrendó salones a entidades con y sin fines de lucro a precios reducidos, pero que su función principal estaba enfocada en el servicio comunitario, educativo y recreativo. Por lo que, se clasificó como una facilidad sin fines de lucro y lo incluyó en la CELI. Revisamos y esta determinación resulta razonable.

El **Centro Yolanda Guerrero**, el Negociado lo incluyó en la CELI porque los ingresos que generaba de sus alquileres para actividades privadas no cubrían los costos de operación. También porque se usó para ofrecer servicio comunitario en las emergencias del Huracán María y la pandemia. Consideró su uso predominantemente sin fines de lucro y su enfoque de servicio a la comunidad. Surge de la *Resolución* que evaluamos que este centro tiene como propósito proveer a la comunidad del Municipio

facilidades para la celebración de actividades recreativas, sociales y culturales que fomenten el desarrollo de una efectiva convivencia humana y el desarrollo de la comunidad.[20]  Pudimos corroborar que las actividades que allí se realizaron, incluyendo bodas, cumpleaños y fiestas familiares, estaban dirigidas a beneficiar a los ciudadanos sin un fin lucrativo.  Estas actividades las podemos considerar como un servicio a la comunidad a los fines de fomentar la convivencia y el desarrollo social y recreativo del Municipio.   En ese sentido, resulta adecuada su inclusión en el CELI.

La **Escuela de Bellas Artes**, el Negociado la incluyó en la CELI porque no operaba con ánimos de lucro, sino con el propósito público de ofrecer a los ciudadanos las facilidades de educación cultural y artística.[21]   La determinación resulta razonable y los recurrentes no presentaron argumentos en contra de la determinación del Negociado de incluirla bajo la CELI.[22]

En el segundo señalamiento de error LUMA adujo que para las instalaciones de uso mixto identificadas como, Río Bayamón Golf Course, Complejo Deportivo Torrimar y Guaynabo Medical Mall, el Negociado determinó que la facturación de esos negocios sería prospectiva, desde el momento en que se finalizara la segregación de los contadores (medición).  Sostuvieron que el efecto de referida determinación era que LUMA no podría facturar el consumo eléctrico de las áreas o actividades con fines de lucro. Adujeron, también, que, mediante la *Resolución* del 8 de mayo de 2025, el Negociado determinó que los Municipios debían proveer estimados del consumo de esas áreas excluidas de la CELI dentro

---

[20] Apéndice del KLRA202500280, pág. 20,077.
[21] Apéndice del KLRA202500280, pág. 20,069.
[22] Ver, además, Solicitud de Revisión Judicial, página 7, nota al calce 5 que indica: "LUMA no se opuso a la inclusión en la CELI de la Escuela de Bellas Artes de Guaynabo."

de las tres instalaciones de uso mixto para que fueran utilizados por LUMA para cobrar la energía consumida a partir de julio de 2025. Alegó que esta decisión es impropia debido a que los Municipios no solicitaron la aplicación de la Sección 3.04(C), por lo que, la norma requiere la exclusión total de la CELI.

La AEE, por su parte, alegó que en el expediente administrativo no existe evidencia que demuestre que el segregar el consumo de ciertas áreas en las facilidades de uso mixto sería "altamente oneroso". Que esa conclusión llevó al Negociado a determinar, de manera excepcional y de conformidad a la Sección 3.04(C) del Reglamento 8818, que el consumo eléctrico de las áreas con fines de lucro, previo a la segregación ordenada en las instalaciones de uso mixto, debía ser incluido dentro de la CELI. Expresó que la aplicación del inciso C de la Sección 3.04 del Reglamento 8818 es incorrecta. Indicó que ninguna de las partes presentó prueba dirigida a que el Negociado hiciera una determinación sobre alternativas para segregar el consumo. Que el Negociado tampoco consideró la opción de hacer estimados para los periodos en los que no hubo medidores separados. Señaló que la aplicación del inciso C de la Sección 3.04 del Reglamento 8818, requiere una solicitud fundamentada del municipio para incluir el consumo en la CELI. Por tanto, el Negociado venía obligado a seguir el Reglamento 8818.

Los Municipios alegaron que cuando el Negociado de Energía emitió su *Resolución Final* y concluyó que el uso de esas facilidades era mixto, ahí fue que se determinó, de manera concluyente, su uso mixto. Indicaron que conforme a la Sección 3.04(C) del Reglamento 8818, el Negociado advirtió que se encontraba ante circunstancias excepcionales que justificaban incluir prospectivamente las facilidades de uso mixto en la CELI.

Señalaron que el Negociado entendió razonablemente que los Municipios expusieron su posición de manera fundamentada que habría sido muy oneroso para estos cobrarles retroactivamente por el consumo excluido por la CELI.[23]

Evaluamos.

En el año 2019 la AEE decretó que ciertas facilidades municipales no estarían incluidas en la CELI. Los Municipios solicitaron revisión ante el Negociado de Energía. El 13 de marzo de 2025 el Negociado determinó, entre otras cosas, que las instalaciones ubicadas en el Coliseo Rubén Rodríguez de Bayamón, el Complejo Deportivo de Torrimar y el Guaynabo Medical Mall tenían uso mixto por llevar a cabo actividades con fines de lucro y sin fines de lucro. El Negociado decretó que esa decisión sería prospectiva, a partir del momento en que los municipios finalizaran la segregación para instalar los medidores y se pudiera facturar el consumo.[24] Indicó que el consumo eléctrico de las áreas **con fines de lucro, previo a la segregación**, **deberá ser incluido dentro de la CELI**. Para llegar a esa decisión, el Negociado entendió que sería injusto y oneroso para el municipio asumir la carga de separar y medir el consumo eléctrico de las actividades con fines de lucro antes de que mediara una decisión sobre la aplicabilidad de la CELI.[25] Indicó que, ante la falta de claridad previa, hacía inviable que se hubiesen implementado las segregaciones necesarias. En consecuencia, el Negociado determinó *motu proprio* incluir las entidades con fines de lucro dentro de la CELI por existir esas circunstancias excepcionales.

---

[23] Recurso del Municipio, págs. 46-47.
[24] Apéndice del KLRA202500280, pág. 20,061.
[25] Apéndice klra202500280, pág. 20,061.

Posteriormente, el 8 de mayo de 2025, el Negociado emitió una *Resolución y Orden* para que los Municipios presentaran estimados de consumo certificados por un perito, mientras se realizaba el proceso de segregación de la medición.  En específico, se ordenó a los Municipios que realizaran el estimado de consumo y lo sometieran a LUMA para comenzar a pagar a partir del 1ro de julio de 2025.  Esta orden se refería a las facilidades de uso mixto.

De lo anterior surge que desde el año 2019 la AEE había excluido de la CELI a las mencionadas facilidades municipales.  Por tanto, los Municipios sabían que el Negociado podía requerirles el pago por el consumo de electricidad de estas.  A pesar de que el Negociado decretó que esas instalaciones tenían uso mixto por albergar actividades con fines de lucro y sin fines de lucro, dispuso que las actividades con fines de lucro, **previo a la segregación**, **deberán ser incluidas dentro de la CELI.**  Esto es, el Negociado incluyó dentro de la CELI el consumo eléctrico de las propiedades de uso mixto que tenían áreas con fines de lucro **previo a la segregación**.  Sin embargo, esta determinación no encuentra apoyo en el Derecho aquí reseñado, pues la Sección 22 (b)(2) de la Ley 83-1941 y la Sección 3.02 (1) del Reglamento 8818 expresamente excluyen de la CELI aquellas actividades con fines de lucro.  Por tanto, no se podía eximir del pago de electricidad de forma retroactiva a las actividades con fines de lucro de las propiedades mixtas.

Por lo anterior, procedemos a devolver el asunto al Negociado de Energía para que determine cómo se hará la medición de las áreas con fines de lucro para los años fiscales 2016 al 2020, acorde al derecho aquí reseñado.

En el tercer señalamiento, LUMA alegó que el Negociado determinó que la inclusión en la CELI continuará

prospectivamente, siempre y cuando el uso de la facilidad no varíe. Señaló que esa decisión es errada porque en el récord del caso no se presentó evidencia sobre periodos posteriores al año 2020. Además, expresó que la Sección 3.03 del Reglamento 8818 requiere la evaluación del uso de las instalaciones para cada año, a tenor con la Sección 3.03(B) del Reglamento 8818. Ante ello, alegó que el presumir que las instalaciones en controversia están incluidas en la CELI sin seguir el proceso de evaluación establecido, es improcedente.

En cuanto a este señalamiento de error, la AEE agregó que la decisión debe ser revocada, toda vez que la evaluación del Negociado se circunscribió exclusivamente a los años fiscales 2016-2017, 2017-2018, 2018-2019 y 2019-2020. Sostuvo que las decisiones de las agencias deben ser basadas exclusivamente en el expediente. Además, indicó que la Sección 3.03 del Reglamento 8818, requiere la evaluación del uso de las instalaciones para cada año. Mas, que la inclusión en la CELI no es perpetua y requiere el cumplimiento anual de ciertos requisitos. Señaló que no se presentó prueba sobre los periodos posteriores a los evaluados, lo que resulta en un subsidio injustificado en perjuicio del resto de los abonados del sistema eléctrico.

Los Municipios alegaron que someterán la información de esas facilidades para el 31 de diciembre de cada año, como lo han hecho. No obstante, que mientras la información sea compatible y congruente en cuanto al uso que ya el Negociado determinó en este caso, su inclusión continuará prospectivamente, mientras no varíe el uso. Expusieron que la AEE y LUMA no pueden pretender sacarlas de la CELI si su uso no ha variado, con el fin de volver a litigar este asunto. Mencionaron que ello persigue el darle

finalidad a los casos y controversias entre las partes y así evitar la sobrecarga innecesaria a los tribunales y las agencias.

Revisamos.

El 4 de abril de 2025, el Negociado de Energía emitió una *Resolución* en la cual aclaró que la inclusión de una facilidad municipal bajo el mecanismo de la CELI tenía efecto retroactivo. Para ello, indicó lo siguiente:

> Aunque la evaluación realizada por el Negociado de Energía se **circunscribió a determinados periodos**, los criterios para la inclusión bajo el mecanismo de la CELI- particularmente, el uso predominantemente no lucrativo de la facilidad- no están limitados a un periodo específico. En la medida en que el Negociado de Energía determinó que una facilidad cualifica para la CELI, esa determinación aplica también **a periodos anteriores** en que se presume mantenía el mismo uso. Por lo tanto, no procede la facturación por el servicio eléctrico correspondiente a tales periodos. Se ACLARA, además, que la inclusión en la CELI continuará **prospectivamente** siempre y cuando el uso de la facilidad no varíe. Cualquier cambio sustancial en el uso de la facilidad podrá conllevar una reevaluación de su elegibilidad bajo el mecanismo de la CELI.

De acuerdo con lo anterior, el Negociado decretó que la inclusión en la CELI continuará prospectivamente siempre y cuando el uso de la facilidad no varíe.

Esta determinación procede únicamente si los municipios cumplen con la Sección 3.03 (A) y (B) del Reglamento 8818. El inciso (A) dispone que, "[e]n o antes del 31 de diciembre **de cada año**, todos los municipios entregarán a la AEE la información necesaria para evaluar y clasificar las propiedades e instalaciones en que ubiquen entidades municipales o personas que llevan a cabo actividades y/o servicios sin fines de lucro, según definidas en este Reglamento, a los fines de identificar aquellas cuentas, propiedades e instalaciones cuyo consumo será incluido como parte de la aportación de la CELI para el siguiente año fiscal."

Luego de este trámite, el inciso (B) indica que, "la AEE, evaluará la información que haya sometido el municipio y clasificará las instalaciones municipales de acuerdo con las disposiciones de este Reglamento. En o antes del **31 de marzo de cada año**, la AEE **notificará al municipio las propiedades e instalaciones municipales cuyo consumo de electricidad estará incluido**, sujeto al tope máximo aplicable al municipio **para el próximo año fiscal**, en la aportación correspondiente por concepto de la CELI."

Lo aquí reseñado estatuye que cada año los municipios deben entregar la información de las facilidades a la AEE, ahora LUMA, para que el ente verifique si el consumo de electricidad será incluido para el siguiente año fiscal, sujeto al tope máximo aplicable al municipio. Por tanto, la inclusión en la CELI no es automática, pues requiere una evaluación anual. Por consiguiente, no procede la inclusión prospectiva en la CELI, pues ello está en contraposición con el proceso que establece la Sección 3.03 del Reglamento 8818.

De manera similar, si el Negociado no evaluó las facilidades municipales durante los periodos posteriores a los aquí reclamados, entiéndase luego del año 2020, no podía extenderles los beneficios de la CELI. Es norma reiterada que la determinación de una agencia debe estar basada en evidencia sustancial que obre en el expediente administrativo. Si esa evidencia no fue presentada ante el juzgador, no se puede incluir como parte de la CELI. Por lo anterior, se deja sin efecto la aplicación retroactiva de la inclusión en la CELI para periodos no evaluados en este caso.

**IV.**

Por las razones antes expresadas, se ***modifica*** la Resolución Final y Orden que emitió el Negociado de Energía el 13

de marzo de 2025, enmendada *nunc pro tunc* el 19 de marzo de 2025. En consecuencia, se devuelve el asunto al Negociado de Energía para lo siguiente:

> Para las propiedades municipales en las que se decretó que su uso era mixto, debe determinar de qué manera se medirá el consumo de electricidad para los años fiscales objeto de este reclamo (2016 al 2020), según provee la Ley 83-1941 y el Reglamento 8818.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones